UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08 C 5330 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| 401 N. WABASH VENTURE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After the Court dismissed his first complaint, plaintiff Michael Burke ("Burke") filed an amended complaint against defendant 401 N. Wabash Venture, LLC. (the "developer"). Plaintiff hopes, eventually, to certify a class. Defendant has moved to dismiss the amended complaint. For the reasons set forth below, the Court grants the motion to dismiss.

**I.    Background**

For purposes of this motion to dismiss, the Court takes as true the allegations in plaintiff's complaint. The Court may consider the documents plaintiff attached to his complaint. *See* Fed.R.Civ.P. 10(c). The Court may also consider documents referred to in plaintiff's complaint so long as the documents do not require discovery to authenticate or disambiguate. *See Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002).

Plaintiff Burke wants his deposit back for a condominium unit he agreed to purchase but on which he failed to close. Defendant 401 N. Wabash, LLC developed a building at 401 N. Wabash in Chicago. The building includes several hundred condominium units, which defendant ventured to sell.

In or about December 2006, plaintiff Burke entered a purchase agreement with defendant for the purchase of unit 31K and two parking spaces. Plaintiff paid an earnest money deposit of more than $400,000.00. At the time, defendant gave plaintiff a copy of the "Property Report" dated September 24, 2003. Among other things, the 2003 Property Report stated:

> The Condominium will contain approximately three hundred twenty-six (326) residential dwelling units that the Developer currently intends will occupy floors forty (40) through forty-eight (48) and fifty-one (51) through eighty-eight (88) in the Building, an undetermined number of unit parking spaces within the above-ground parking facilities that the Developer currently intends will be located on some of floors three (3) through twelve (12) in the Building (provided that the unit parking spaces will occupy only a portion of such above-ground parking garage area, and the balance of the above-ground parking garage area will be occupied by the public parking garage facility more fully described below) . . .

(2003 Property Report at 2).

On or about August 5, 2008, defendant set a closing date of August 7, 2008. Defendant also provided Burke a copy of the condominium's Declaration and a copy of a Special Amendment to the Declaration. The Special Amendment stated that the sixth floor would be used for parking spaces. Plaintiff asserts that turning the sixth floor into parking lowered the value of his parking space and increased the amount of maintenance fees he would be required to pay. In addition, in or about October 2007, defendant issued a Fourth Property Report. In the Fourth Property Report, as compared to the September 2003 Property Report, annual common expenses (which would be charged to the unit owners) increased to $7,328,455 from $5,595,700. The amount allocated for service contracts increased to $1,047,849 from $398,000. The amount allocated to administrative fees increased to $2,308,881 from $1,676,518. Plaintiff alleges that the increases constitute consumer fraud. Finally, plaintiff asserts that defendant put only $69,584 in reserves.

Plaintiff refused to close on the unit. Defendant refused to return his earnest money deposit. This suit followed.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Legal conclusions, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (rejecting, as conclusory, allegations that defendants "knew of, condoned, and willfully and maliciously" engaged in conduct). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d

773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950.

### III. Discussion

#### A. Plaintiff's breach of contract claims

In Counts I, II, and III, respectively, plaintiff alleges that defendant breached its agreement with plaintiff by: I) using the sixth floor for parking, II) making changes to the budget, and III) providing inadequate reserves when the developer turned over the building to the condominium association.

As defendant points out, in each of these counts, plaintiff asserts that defendant breached a contract, but plaintiff fails to point to any contract provision that was breached. The Court fails to see how, post-*Iqbal*, a plaintiff could state a claim for breach of contract without alleging which provision of the contract was breached. *See LaSalle Bank Nat'l Assoc. v. Paramont Properties*, 588 F. Supp.2d 840, 856 (N.D. Ill. 2008). Without alleging a contract provision that was breached, the claim is merely possible, not plausible.

Accordingly, defendant's motion to dismiss is granted as to Counts I, II and III. Counts I, II and III are dismissed without prejudice.

#### B. Plaintiff's claims for rescission

In Count IV, plaintiff alleges that his agreement with defendant to purchase a condominium should be rescinded for lack of mutuality. Plaintiff alleges that a provision in the agreement "purports to allow Defendant to breach the agreement and the only recourse to Plaintiff would be a return of his earnest money, which is something Defendant would be obligated to do in any event." The provision to which plaintiff refers states:

> If Seller defaults on any of Seller's covenants or obligations hereunder, the Purchaser's sole and exclusive remedy, in lieu of any and all legal or equitable remedies hereunder or otherwise, shall be a refund of Purchaser's Earnest Money deposit and interest which may have accrued thereon . . .

Purchase Agreement at 12(b).

The problem with plaintiff's claim, however, is that, under Illinois law, such provisions are interpreted so as to be mutually binding. *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180 (Ill. App.Ct. First Dist. 2004); *Borys v. Josada Builder, Inc.*, 441 N.E.2d 1263, 1266-1267 (Ill. App.Ct. First Dist. 1982). In *Schwinder*, the purchase agreement included a provision that said, "Return of the Purchaser's funds shall be the Purchaser's sole exclusive remedy in the event of Seller's Default." *Schwinder*, 809 N.E.2d at 185. The court rejected the argument that the contract lacked mutuality due to the provision and, instead, found the contract enforceable. Similarly, section 12(b) of the contract in this case (which contains the same "sole and exclusive remedy" language) does not mean that the contract lacks mutuality. Count IV fails to state a claim, and the Court dismisses it with prejudice.

In Count V, plaintiff again seeks to rescind the purchase agreement. This time, the plaintiff asserts that the purchase agreement should be rescinded pursuant to § 22 of the Illinois Condominium Property Act, 765 ILCS 605/22. That section requires that certain information be provided to prospective initial purchasers of condominiums. In addition, the section provides:

> All of the information required by this Section which is available at the time shall be furnished to the prospective buyer before execution of the contract for sale. Thereafter, no changes or amendments may be made in any of the items furnished to the prospective buyer before execution of the contract for sale. Thereafter, no changes or amendments may be made in any of the items furnished to the prospective buyer which would materially affect the rights of the buyer or the value of the unit without obtaining the approval of at least 75% of the buyers then owning interest in the condominium. If all of the information is not available at the time of execution of the contract for sale, then the contract shall be voidable at

the option of the buyer at any time up until 5 days after the last item of required information is furnished to the prospective buyer, or until the closing of the sale, whichever is earlier. Failure on the part of the seller to make full disclosure as required by this Section shall entitle the buyer to rescind the contract for sale at any time before the closing of the contract and to receive a refund of all deposit moneys paid with interest thereon at the rate then in effect for interest on judgments.

765 ILCS 605/22.

In Count V, plaintiff seeks rescission on the grounds that defendant "made material changes to the Declaration and operating budget" without obtaining "the approval of at least 75% of the buyers" in the condominium. As defendants point out, however, Section 22 allows rescission under two circumstances, neither of which includes making a material change without the approval of 75% of the owners. The statute allows the buyer to rescind before closing if the seller fails to make full disclosure. The statute also allows the buyer to rescind before closing within five days after receiving the last of the required disclosures. Nothing in the statute, however, allows rescission where a developer made material changes without the approval of 75% of the buyers, and the Court will not imply such a cause of action. *See Goldberg v. 401 North Wabash Venture LLC*, Case No. 09 C 6455, 2010 WL 1655089 at *6-7 (N.D. Ill. April 22, 2010).

Plaintiff has failed to state a claim in Count V, and the Court dismisses with prejudice Count V.

### C. Plaintiff's consumer fraud claims

In Count VI, VII and VIII, plaintiff asserts that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act. That Act provides, in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense,

> false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby.

815 ILCS 505/2. To state a claim under the Act, a plaintiff must allege: "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce." *Siegel v. The Levy Org. Dev't Co., Inc.*, 153 Ill.2d 534, 542 (Ill. S.Ct. 1992).

In Count VI, plaintiff asserts that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by making the sixth floor into parking spaces. The effect of making the sixth floor into parking, according to plaintiff, was to lower the value of his parking space and to increase the maintenance costs he would be forced to pay. As defendant points out, it is not fraud to engage in conduct that is authorized by a contract. *See The Northern Trust Co. v. VIII South Mich. Assoc.*, 657 N.E.2d 1095, 1103 (Ill. App.Ct. First Dist. 1995) ("A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed the contract."). The September 2003 Property Report (which plaintiff alleges he received) stated, "an undetermined number of unit parking spaces within the above-ground parking facilities that the Developer currently intends will be located on some of floors three (3) through twelve (12) in the Building (provided that the unit parking spaces will occupy only a portion of such above-ground parking garage area, and the balance of the above-ground parking garage area will be occupied by the public parking garage facility more fully described below) . . ." The Court fails to see how defendant's putting parking on the sixth floor could possibly constitute fraud when plaintiff was told in writing that the sixth floor was one of the floors that might contain parking. The Court dismisses with prejudice Count VI.

In Count VII, plaintiff alleges that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act "by its unauthorized and material changes to the operating budget on Trump Tower and failing to disclose such to Plaintiff before the agreement was entered into." Thus, plaintiff is essentially asserting a claim that it was fraud that defendant, in 2006, failed to tell plaintiff that it would, in 2008, make changes to the operating budget. As the Court sees it, this can be a fraud claim only if the defendant, in 2006, purposely low-balled its estimates of operating expenses (so that it could induce individuals to purchase condominiums) knowing that the operating expenses would, in fact, be significantly higher. In other words, plaintiff must allege that defendant knew in 2006 that the operating expenses in 2008 would be much higher than defendant said, in 2006, they would be. *Rockford Mem. Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill. App.Ct. 2nd Dist. 2006) ("for a material omission to be actionable [under the Illinois Consumer Fraud and Deceptive Trade Practices Act], the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment"). That, however, is not what plaintiff has alleged. Accordingly, Count VII fails to state a claim. The Court dismisses without prejudice Count VII.

In Count VIII, plaintiff alleges that defendant violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by "failing to maintain adequate reserves for Trump Tower and failing to disclose such to Plaintiff before the agreement was entered into." Once again, plaintiff has failed to allege that defendant knew, at the time of the omission, that it had failed to maintain adequate reserves. Count VIII is dismissed without prejudice.

### D. Plaintiff's claims for breach of fiduciary duty

In Count IX, plaintiff asserts that defendant breached its fiduciary duty to plaintiff by failing to provide for adequate reserves. In Count X, plaintiff asserts that defendant owed a fiduciary duty to plaintiff to maintain reserves and that defendant engaged in constructive fraud by failing to disclose to plaintiff that it failed to maintain adequate reserves.

The Court first considers Count IX for breach of fiduciary duty. The cases plaintiff relies on to support Count IX stand for the proposition that a condominium developer owes a fiduciary duty *to the condominium association* to maintain adequate reserves. *See Board of Mgrs. of Weathersfield Condo. Assoc. v. Schaumburg Ltd. Partnership*, 717 N.E.2d 429, 435 (Ill. App.Ct. First Dist. 1999); *Maerker Pt. Villas Condo. Assoc. v. Szymski*, 655 N.E.2d 1192, 1195-1196 (Ill. App.Ct. 2nd Dist. 1995). These cases do not stand for the proposition that the developer owes a fiduciary duty to a *prospective purchaser* who never became a unit owner. Plaintiff has put forth no case that suggests defendant owed a fiduciary duty to him, and he lacks standing to sue on behalf of the condominium association. Accordingly, the Court agrees that plaintiff has failed to state a claim in Count IX. The Court dismisses with prejudice Count IX.

In Count X, plaintiff asserts constructive fraud. To state a claim for constructive fraud under Illinois law, plaintiff must "'allege facts establishing the breach of duty arising from a fiduciary or confidential relationship whereby the fiduciary has profited.'" *Vega v. Contract Cleaning Maintenance, Inc.*, Case No. 03 C 9130, 2004 WL 2358274 at *8 (N.D. Ill. Oct. 18, 2004) (quoting *Hoopingarner v. Stenzel*, 768 N.E.2d 772, 778 (2002)). As defendant points out, plaintiff has failed to assert any facts that would suggest defendant owed plaintiff a fiduciary duty. Accordingly, Count X fails to state a claim. The Court dismisses without prejudice Count X.

## IV. Conclusion

For the reasons set out above, the Court grants defendant's motion to dismiss. Counts IV, V, VI and IX are dismissed with prejudice. Counts I, II, III, VII, VIII and X are dismissed without prejudice. Plaintiff is granted leave, should he so choose, to file an amended complaint within 21 days. Defendant shall answer or otherwise plead within 21 days thereafter.

Because the Court has dismissed plaintiff's amended complaint, plaintiff's motion for class certification is denied as moot.

ENTER:

George M. Marovich
United States District Judge

DATED: June 9, 2010